FILED

Name: Laura Lynn
Address: 4507-B  Mission Ave
Oceanside, California 92057
Telephone: (760) 966-6000
Email: Bohemian_books@yahoo.com
In Pro Per

2011 JUN 24  PM 1: 00

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA LYNN, | Case Number: |
| Plaintiff, | CV 09-08717-PSG(VBK) |
| v. | RESPONSE TO NOTICE OF |
| ALAN H. FRIEDENTHAL, individually and in his official capacity as COMMISSIONER OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, Et al. | MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF'S FIRST AMENDED COMPLAINT BY DEFENDANTS KENNETH P. SHERMAN and CARLSON, DE KLERK, SHERMAN AND RALE |

Defendant

1

# TABLE OF CONTENTS

2

3    I. THERE ARE DISPUTED MATERIAL FACTS.................1

4    II. THE CIVIL RIGHTS ACTION IS NOT BARRED BY THE

5    *ROOKER-FELDMAN DOCTRINE*...................................8

6    III. THE PLAINTIFF'S CLAIMS ARE NOT BARRED BY

7    ABSOLUTE IMMUNITY PROVIDED BY THE NOERR-

8    PENNINGTON DOCTRINE...........................................13

9    IV. THE ONE YEAR STATUTE OF LIMITATIONS ON ACTIONS

10   AGAINST ATTORNEYS ARISING OUT OF THE PERFORMANCE

11   OF PROFESSIONAL SERVICES TOLLS UNTIL THE PLAINTIFF

12   CAN KNOW ABOUT THE ACTUAL CONSPIRACY TO COMMIT

13   FRAUD AND THE DISCLOSURE OF THE ILLIGITIMATE

14   COMMUNICATIONS BETWEEN THE DEFENDANTS THAT

15   WERE NOT SUBJECT TO ATTORNEY-CLIENT PRIVILEGE AND

16   FROM THE LAST OCCURANCE OF DAMAGE PURSUANT TO

17   THE CONSPIRACY.....................................15

18   V. CALIFORNIA CIVIL CODE 47 ABSOLUTE LITIGATION

19   PRIVILEGE DOES NOT APPLY TO 42 USC 1983 or 1985

20   CLAIMS...........................................16

21   VI. CALIFORNIA CIVIL CODE 47 ABSOLUTE LITIGATION

22   PRIVILEGE DOES NOT APPLY, BECAUSE THE TORTIOUS

23   CONDUCT WAS NOT RELEGATED TO THE JUDICIAL

24   PROCEEDINGS......................................17

25   VII. PLAINTIFF DOES NOT LACK ARTICLE III STANDING..21

26   VIII. NON STATE ACTORS CAN BE ACTING UNDER COLOR

RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

1  OF LAW WHEN ACTING IN CONCERT WITH STATE ACTORS23

2  CONCLUSION……………………………......................................24

3

4

5

6  **TABLE OF AUTHORITIES**

7

8  Federal Cases

9

10  *Billado v. Parry, 937 F. Supp. 337………………………….............24*

11  *In re CMGT, Inc., 384 B.R. 497 (Bankr. N.D. Ill. 2008)…………..1*

12  *Cordova v Vaughn Mun. School Dist. Bd. Of Educ., 3 F.Supp.2d 1216*

13  *………………………………….......................................23*

14  *Goldstein v Chestnut Ridge Volunteer Fire Co., 218 F.3d 337,*

15  *certiorari denied 121 S.Ct. 882, 531 U.S. 1126, 148 L.Ed.2d 790,*

16  *certiorari denied 121 S.Ct. 1096, 531 US 1152, 148 L.Ed. 2d 969 -*

17  *Civil R 1326(4)………………………… .............................23*

18  *Kougasian v TSML, inc 359 F. 3d 1136…………………………11*

19  McDonald v Smith (1985) 472 U.S. 479, 86 L. Ed. 2d 384, 105 S. Ct.

20  2787………………………………….....................................14

21  Mendocino Envtl. Ctr. V. Mendocino County…………………. .12

22  Noerr-Pennington Doctrine……………………………….......13,14

23  *Paschal v Great Western Drilling, Ltd., 215 S.W. 3d 437 (Tex. App.*

24  *22 Eastland 2006), review denied, (June 1, 007)…………………..15*

25  Pinard v Claskanie School Dist…………………………….......12

26  *Rodriguez v. Conagra, Inc., 387 F.Supp. 951, affirmed 527 F.2d 540.*

1 ... ... ... ... ... ... ... .... ... .................................................................24

2

3 *the Rooker–Feldman Doctrine* ... ... ... ... ... ... ... .... .............8, 11

4 *Reuben H. Donnelley Corp. v Brauer, 211 Ill Dec. 779, 655 N.E.2d 33*

5 *1162, 275 Ill.App.3d 300.... ... ... ... ... ... ... ... .............................24*

6 *Rutkin v Reinfeld, 229 F. 2d 248 (2d Cir. 1956) ... ... ... ... ... ...15*

7 Union Oil Co. 138 F.T.C. 1,25 (2004)..............................14

8 *White* v. *Nicholls* (1845) 44 U.S. (3 How.) 266, 291, 11 L. Ed. 591..14

9

10 Federal Statutes

11 42 USC 1983 and 1985.......................................................16, 24

12 Federal Rules Of Evidence 501..........................................17

13

14

15 California Cases

16 *Durant Software v. Herman, 220 Cal. App. 3d 460 ... ... ... ... ... ...19*

17 *Lucas v. Swanson & Dowdall, 53 Cal. App. 4th 98.... ... ... ... ... ...14*

18 *Oren Royal Oaks, Supra, 42 Cal 3d, 1163.... ... ... ... ... ... ... ... ...18*

19 *Rodriguez v North Am. Aviation, Inc., 252 Cal App. 2d 889, 61 Cal.*

20 *Rptr. 579 (1ˢᵗ Dist. 1967)... ... ... ... ... ... ... ... ... .............................15*

21 *Silberg v Anderson, 50 Cal. 3d 205 (1990)... ... ... ... ... ... ... ...20*

22

23 *California Statutes*

24 *Civil Code 47.... ... ... ... ... ... ... ... ... .............................16, 17, 18, 19*

25 *Family Code 215.... ... ... ... ... ... ... ... ... ................................22*

26 *Government Code 6200.... ... ... ... ... ... ... ... ... .............................23*

RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

The Defendant's motion should be dismissed for the following reasons.

## I. THERE ARE DISPUTED MATERIAL FACTS

The Plaintiff agrees whole-heartedly with the concept found in the Attorney
Defendants' Memorandum of Points and Authorities (MPA) pg 4, Standard for
Judgment on the Pleadings: In deciding a Judgment on the Pleadings, the Court
must deem the facts in the complaint as true, and view the facts presented in the
pleadings and inferences to be drawn therefrom in the light most favorable to the
nonmoving party. *In re CMGT, Inc., 384 B.R. 497 (Bankr. N.D. Ill. 2008).*

In the MPA Pg. 1 line 16 the defendants claim "the Attorney Defendants
represented the minor children, S.L. and B.L., for less than a year, during which
time the only action taken was efforts to have Laura's visitation with B.L.
monitored by a professional monitor. The order by Commr. Friedenthal appointing
a monitor was based on credible information provided by the child's grandparents,
Helen and Jim Lynn ("Jim"), who had sole legal and physical custody of B.L. at all
relevant times."

Appointing the monitor was actually a result of Laura hanging missing children
posters of Defendant Helen's other grandchildren.

But that is not the only discrepancy between the facts presented by opposing
counsel. The Attorney Defendants actually represented the minor children for just
over one year, not less than a year. (Appointed July 12, 2007, relieved July 16,
2008. The Attorney Defendants' agree with these dates in the Statement of Facts in

their own MPA. Page 2, line 13 and Page 3, line 17, making their claim of less than one year quite ingenuous. This fact would not be material, in light of the fact that the length of time a co-conspirator is actively involved in a conspiracy is immaterial; But the Attorney Defendants posture that they were not even involved for very long, and therefore are somehow forgiven for their contribution to the egregious injustice done to the Plaintiff and two innocent children.)

The Attorney Defendants recommended continued sole legal and physical custody of both children to the father, Timothy ("Tim") Lynn on August 29, 2007. Commr. Friedenthal adopted the recommendations at that time.

The Attorney Defendants only recommended a change of custody in November 2007, about two weeks after Tim Lynn allegedly punched S.L. in the face in the Kaiser parking lot. The Attorney defendants did not pursue any investigation of their client's allegations from the Kaiser security personnel or physician who attended the client immediately after the alleged DV battery, effectively committing extrinsic fraud on the court. The Attorney Defendant did recommend that the client S.L. be allowed to live with the mother, though official custody remained with the father. Commr. Friedenthal adopted all the Attorney Defendant's recommendations.

At the same ex parte hearing in November, the Attorney Defendants recommended a change of custody of B.L. to the paternal grandparents. This is when they took custody.

The order by Commr. Friedenthal to appoint a monitor was based on the fact that the plaintiff hung missing children posters of the grandparents' other grandchildren who were indeed abducted by Defendant Helen's daughter Crystel Lynn Strelioff. In fact, the initial, temporary order appointing a monitor happened on December 21, 2007 in an ex parte hearing in which the Commr. Friedenthal tossed the plaintiff's responsive declaration in the trash, an act of extrinsic fraud on the court. (A copy of the declaration eventually made it into the case file, years later, post dated.) The hearing was called at 12:00 noon, the court reporter left for lunch, and the order appointing a monitor was made exactly three minutes later, after Commr. Friedenthal chewed out the plaintiff for hanging missing children posters. After making the order, Commr. Friedenthal added that the Plaintiff could be sued for "defamation" and he was just "warning" her.

All other evidence presented was hearsay. The Minor's Counsel Attorney Defendants did not even attempt to contact the Plaintiff to verify anything Helen said, Buddy said, Laura said. A first year law student would know that relying on such "evidence" is negligent, if not done with criminal intent. The plaintiff contacted appellate attorneys after the hearing, but was discouraged from filing an appeal. The appellate attorneys agreed that an appeal would be expensive and because of the nature of family law, any gains made at the appellate level could be taken away immediately in another ex parte hearing. The Plaintiff does concede that no matter how egregious the negligent acts or outright intrinsic fraud, the Court and the Attorney had civil immunity for judicial acts taken within jurisdiction of the case. But the Attorney Defendant did not have immunity for extrinsic fraud, which shall be discussed fully later in this document.

During discovery of this civil case, evidence was uncovered that court personnel secreted volumes of the case file in PD 016769 from the plaintiff and the appellate court (where the plaintiff eventually did file a few actions.) The plaintiff is asking the California Supreme Court to document that all orders of September 2, 1997 and subsequent are invalid due to inadequate service as per Family Code 215. The orders are void, not voidable. The Attorney Defendants also hid this important information from the Plaintiff, who was not aware of her rights at the time. All orders after that date are void, but the presumption of the Plaintiff at all relevant times was that the orders were valid. The Attorney Defendants acted as if the void orders were valid, even after the plaintiff gave a very detailed account of how the September 2, 1997 void orders were made to Defendant Sherman on August 28, 2007.

On MPA pg 2 line 15 the Attorney Defendants claim that "on November 16, 2007, Defendant Friedenthal placed the children in the custody of their paternal grandparents, Helen and Jim. (FAC, P39.)" In fact, Defendant Friedenthal placed only B.L. in the custody of Helen and Jim. Helen was then upset because S.L. was allowed to live with his mother, the Plaintiff. She acted worried that SL would give information about his missing cousins, MS and LS to the plaintiff and authorities. SL did in fact share information about how Helen and Jim conspired to secret the children and their threats to dismember SL if he talked about the missing cousins with Public Defender Kate Coyne in San Diego, the First Assistant District Attorney in Illinois and the plaintiff. This is material because it shows the beginning of Defendant Sherman taking some sort of stance against the demands of Defendant Helen, who acted like she "owned the court".

Helen used her presumed custodial rights of BL to continue to torment SL and the
Plaintiff. The Attorney Defendants continued to secret information from the
plaintiff and did not, to the plaintiff's knowledge or belief, tell the proper
authorities that they knew Helen and Commissioner Friedenthal were using the
threat of further sanctions in family law court to help hide the abducted children.
The attorney defendants did not communicate with the plaintiff in any way the
conspiracy to defraud the plaintiff of about $250,000 in the guise of child support
to Tim Lynn. On May 1, 2009 the Attorney Defendants included a copy of the
March 25, 2008 email from Helen Lynn to Ken Sherman in a packet sent to Sean
Lynn. This communication was not protected by attorney-client privilege, and the
attorney defendants' lack of disclosure to the plaintiff prior to May 1, 2009 was
obstruction of justice and extrinsic fraud.

On MPA pg 2 the Attorney Defendants mis-state that the unreturned phone calls
were in an attempt to regain custody. The phone calls in question were in regards
to Helen and Jim denying the plaintiff her limited visitation in retaliation for the
plaintiff hanging missing children posters on December 16, 2007.

On MPA pg 4 the Attorney Defendants assert that Laura did not oppose Defendant
Howard's motion to dismiss the claim against him. This is not true. Laura did file a
motion for reconsideration, but was denied her motion. She also filed objections to
the Magistrate's recommendations. It is interesting to note that Defendant Howard
continues to refuse to perform his obligation to provide visitation monitoring to
Laura in violation of their verbal contract. It is material that the dismissal was due
to a procedural error on the Plaintiff's part and not due to lack of merit to her claim
that Defendant Howard is a co-conspirator in the denial of Laura's constitutional

rights. In fact, the family law rulings, even if void, specify Defendant Howard,
Commissioner Friedenthal's neighbor to be the only person allowed to monitor the
visits. The Plaintiff in the instant case is not complaining about the court's order,
but that Defendant Howard refuses to provide the court ordered visitation at
Defendant Helen's direction.

In the MPA pg 9 the Attorney Defendants claim "Laura discovered the facts
constituting the Attorney Defendants' allegedly wrongful acts or omissions by
December 21, 2007." This is not true. Laura suspected wrong-doing even before
December 21, 2007. But a mere suspicion or conclusion is not grounds for filing a
lawsuit. Laura did not have copies of the incriminating emails between Helen Lynn
and Ken Sherman until after they were mailed to Sean on May 1, 2009. In fact, by
not sending a copy of the emails which were not protected by attorney-client
privilege to Laura immediately upon receipt by Mr. Sherman, the Attorney
Defendants were committing obstruction of Justice, Extrinsic Fraud and sealing
their participation in the conspiracy to deny Laura of Constitutional Rights and aid
and abet child abductor Crystel Lynn Strelioff.

Also, the conspiracy is a continuing course of conduct. The Plaintiff may have
jumped the gun on filing her complaint, and could have waited until the co-
conspirators were all finished with the conduct, but the Plaintiff thought that filing
a lawsuit might convince the conspirators to act right. She was sorely mistaken. As
late as January 18, 2011, co-conspirator Commissioner Friedenthal left a
threatening and defamatory message about Laura on Debra Bongiavanni's
answering machine. Ms. Bongiavanni was a source in a story about Commissioner
Friedenthal's alleged immoral sexual acts with a minor male who Defendant's

Friedenthal and Padilla adopted. Ms. Bongiavanni is the abuse victim's biological mother.

The conspiracy did not end when one element was performed and it did not end when Kenneth Sherman asked to be relieved from the family law case. The conspiracy will end when all members of the conspiracy cease any behavior that continues to deprive the plaintiff to her Constitutional Rights.

On MPA pg 13 the Attorney Defendants state "Laura's conspiracy claim only alleges conduct by the Attorney Defendants arising out of their representation of Laura's children in the family court action, namely their alleged interference with Laura's claim for child support." This mis-characterizes the claim about child support. Laura was not asking for child support. Helen  had custody, but could not collect child support or state aid, especially without showing her tax returns. (See email of March 25, 2008.) The eventual change in custody of B.L. back to Tim was accomplished for the sole purpose of collecting fraudulent child support from Laura. The support that was ordered based on Laura allegedly earning $34,000 per month, even though she could not afford health insurance or other basic necessities, is under appeal and is submitted for investigation of the judicial officers involved to the appropriate law enforcement. It is material that the family law court did not have personal jurisdiction over Helen, and thus the entire fraud to collect child support was not a State family law issue until after custody was returned to Tim (on paper only).

In general, the Attorney Defendants present a scenario where they were just representing the children SL and BL and Laura did not like the way they did their

RESPONSE TO MOTION FOR JUDGEMENT ON THE PLEADINGS

job. The Plaintiffs complaint is that Commissioner Friedenthal, the Attorney

Defendants and Helen, not a party to the family law case, acted in concert to

intimidate Laura into ceasing her efforts to help apprehend a convicted child

abductor and later to stop Laura from writing anything about the court personnel.

The Plaintiff contends the co-conspirators then devised a plan to defraud Laura of

money in the guise of being child support for Tim.

## II. THE CIVIL RIGHTS ACTION IS NOT BARRED BY *THE ROOKER-FELDMAN DOCTRINE*

In the Motion for Judgment on the pleadings (the motion), MPA page 1, line 24 the

defendant's claim "Laura's civil rights action is barred by *the Rooker-Feldman*

*doctrine*". This is a misinterpretation of *the Rooker-Feldman Doctrine*. The Florida

State University Law Review Vol 36:373 has a comprehensive analysis of *the*

*Rooker-Feldman Doctrine* by Dustin E. Buehler. Basically, the doctrine applies

only to discourage "losers" in State Court from seeking appellate review through

the Federal Court. In the family law case PD 016769, the plaintiff is exhausting her

remedies through the appellate process, and now has two active appeals and a third

appeal that is presented to the California Supreme Court for Petition for Review.

In the case at bar, the Federal Case, the plaintiff is addressing issues that are

outside the jurisdiction of the State Family Law Court. First, defendant Helen Lynn

was not joined as a party to the action, though defendants Sherman and Carlson,

De Klerk, Sherman and Rale (the firm) could have and should have made a motion

to join her. The State was not given jurisdiction over Helen Lynn, and therefore,

could not enforce her responsibilities. This Federal Case is not an attempt to appeal

the family law court's decisions; The family law court did not have jurisdiction over defendant Helen Lynn and would therefore not be the appropriate forum to ask for damages arising from the defendant's denial of constitutional rights and fraud.

The *42 USC 1983 and 1985* claims presented in the case at bar are outside the subject matter jurisdiction of the family law court.

The denial of Constitutional Rights by the defendants include the abuse of power in matters that were not within the State Court's jurisdiction, such as  to deny the plaintiff the right to post missing children posters of children who were not a subject of the family law case. The very same flyers were posted by the GSA in the IRS online tax pamphlet as well as in the Federal Building in Downtown Los Angeles. Obviously, IRS and GSA thought it was perfectly legal to post those flyers. In fact, Laura's efforts helped in the apprehension of convicted child abductor Crystel Lynn Strelioff, defendant Helen Lynn's daughter, by the US Marshall service. For reasons of confidentiality of sources and potential ongoing criminal investigations, the plaintiff would only be willing to support this claim in camera and with no reference to sources names.

Also, and completely left out of the defendants' motion is any reference to the co-conspirators attempts to chill the plaintiffs freedom of speech in regards to completely separate issues. Commissioner Friedenthal referred in court, on his own initiative and with no motion by any party,  to postings on Courthouse forum that were protected speech by the plaintiff. The Statute of limitations on defamation has run on those comments, and the Commissioner, educated in law and knowing the

1   plaintiff may someday inherit a small fortune, still did not file a suit. Instead he and
2   the co-conspirators punished the plaintiff by making ridiculous recommendations
3   and rulings in the state case. (Over two years later, the Commission on Judicial
4   Performance has yet to deny and is still investigating the plaintiff's complaints
5   regarding the inappropriate discussion and reading of Laura's postings by a judicial
6   officer who presided over Laura's family law case.) The Plaintiff is not
7   complaining of the Court's ridiculous family law rulings here. She is complaining
8   that she was bullied in an attempt to chill her unrelated free speech. It is irrelevant
9   if the Court and Attorney Defendants wielded a bat at the plaintiff or threatened to
10  use their position of trust and power to coerce the plaintiff into not writing about
11  the defendants anymore.
12
13  The letter of William Spiller dated June 10, 2009 submitted for judicial notice also
14  refers to the co-conspirators' intentions to take rights from other parents "if any
15  further posts appear [on Courthouse Forum] regarding the above referenced matter
16  or the involvement of any bench officer, attorney or anyone else have (sic)
17  anything to do with said matter, we shall treat same as negative influence as
18  concerns the well being of our client and will take all appropriate steps to ensure
19  that all legal restrictions are put in force to protect our client which may or may not
20  include availing ourselves of all legal remedies at hand and on an ex parte basis, if
21  necessary. You are forwarned as to this issue...
22
23
24  "Please note that we do not care about the identify (sic) of anyone posting any
25  negative comments on the aforementioned website but only that such comments
26  are posted. If anything is posted, we will do that which is necessary in the best
27
28

1  interests of (child's name), whether or not you are involved or whether or not you

2  know the identity of the person(s) placing such posts."

4  Not only were my children separated from me because of non-jurisdictional posts

5  the co-conspirators did not want me to write, but there was a threat to take away

6  any child from any parent if I wrote about the court or any appointed minor's

7  counsel in a negative light. (The letter from attorney Spiller was regarding a case

8  before Commr. Friedenthal, but with Mr. Spiller as minor's counsel instead of the

9  Attorney Defendants.)

11  "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a

12  state court, and seeks relief from a state court judgment based on that decision,

13  *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the

14  other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or

15  omission by an adverse party, Rooker-Feldman does not bar jurisdiction."

16  *Kougasian v TSML, inc 359 F.3d 1136*

19  The case at bar is not an appeal of the State Court's family law decisions. (Those

20  are on appeal simultaneously and for reasons other than were brought up in the

21  December 21, 2007 and January 3, 2008 hearings.) It arises from a cause of action

22  that asks the Federal Court to enforce freedom of speech in regards to matters that

23  are not issues in the family court's jurisdiction. (That the plaintiff hung missing

24  children posters of someone else's children that were abducted is irrelevant in the

25  plaintiff's family law case. That the plaintiff published a story about Commissioner

26  Friedenthal posting to a dating website that he is a widower, even though his wife,

27  Commissioner Padilla was still alive, is not an issue that the State Family Law

1   Court had jurisdiction over. As much as the Plaintiff would like the Court

2   Defendants and the Attorney Defendants to "pay" for what they did in the family

3   law case, she agrees that payment will only be in serving prison time. The plaintiff

4   is here asking only for compensation for non-jurisdictional rights that were denied

5   and for any damages arising out of extrinsic fraud.)

7   The plaintiff understands that the defendants did not want her to post the

8   information she posted. But they had no more right to "throw" the family law case

9   than they would have to shoot her in the head. Had the defendants shot the plaintiff

10  in the head instead of denying her constitutional right to a parent-child relationship,

11  would a criminal court dismiss a criminal case against them by claiming it was just

12  a masquerade for an appeal? No. The shot in the head and the denial of

13  constitutional rights to a parent-child relationship are both issues that would not be

14  heard by the State family law court or through an appeal of the family law court.

15  The shot in the head would be heard in criminal court and the survivors would file

16  a separate civil suit against the perpetrators. Likewise, the conspiracy to deny the

17  plaintiff her Constitutional rights may eventually be heard in criminal court and the

18  denial of constitutional rights under the color of law civil suit should be heard here,

19  in the Federal Civil Court.

22  As per the standard raised by the Attorney Defendants themselves, by *Piinard and*

23  *Mendocino (MPA Pg 6 at line 12);* (i) the act of hanging missing children posters

24  of Defendant Helen Lynn's other grandchildren was protected speech) (ii) a person

25  of ordinary firmness would have been scared off by the defendants actions. The

26  plaintiff is decidedly brave and a woman of strong faith who would lay down her

27  own life to protect others, but the ordinary person would have backed off in

28

helping to apprehend the child abductor Crystel Lynn Strelioff once the court and the other defendants sent their very loud message. (iii) the protected activity was the only motivating factor in the defendants' conduct. At the hearing on December 21, 2007, only the hanging of missing children posters was addressed by the court. All other "facts" given in the declaration of Helen Lynn were not even marginally admissible as evidence, pure hearsay, and the Attorney Defendants who had a duty of care to the plaintiff as a third party beneficiary did not even attempt to ask the plaintiff the truth to any of the hearsay statements or object to the information they had decided to get into court with Helen Lynn. (There are three versions of the declaration that will be presented at trial that show how the Attorney Defendants and Helen Lynn worked together to edit her declaration.)

The family law proceedings will be submitted as evidence, but not to show harm from the family law rulings, just to show that there was no other motivation for denying the plaintiff and her children a right to a relationship except the attempt to chill free speech about unrelated subjects.

III. THE PLAINTIFF'S CLAIMS ARE NOT BARRED BY ABSOLUTE IMMUNITY PROVIDED BY THE NOERR-PENNINGTON DOCTRINE

First, in the Attorney Defendant's answer to the complaint at 119 they admit that they are not subject to the rule of judicial immunity.

*Noerr* does not give a broad general immunity without exception. "Although Supreme Court law remains unsettled, the weight of the lower court authority, spanning more than thirty years, has recognized that misrepresentations may

preclude application of *Noerr-Pennington* in less political arenas than the
legislative lobbying in *Noerr* itself." (*In re Union Oil Co., 138 F.T.C. 1, 25 (2004).*

I"n a case which never considered *Noerr-Pennington* at all, **McDonald** v. **Smith**
(1985) 472 U.S. 479, 86 L. Ed. 2d 384, 105 S. Ct. 2787, the United States Supreme
Court held that false statements sent to a variety of public officials in an effort to
stop a particular candidate from being appointed a United States Attorney were not
immune from a subsequent libel action because the statements were made
maliciously.

"The *McDonald* court was clearly reluctant to *extend* petition clause protections to
malicious lies made under the guise of petitioning the government. The opinion is
essentially a reaffirmation of an 1845 decision which concluded a customs
inspector could proceed in a libel suit for lies set forth in letters to the President of
the United States as long as there was '"express malice.'" (See *McDonald, supra*,
472 U.S. at p. 484, quoting *White* v. *Nicholls* (1845) 44 U.S. (3 How.) 266, 291, 11
L. Ed. 591.)" *Lucas v. Swanson & Dowdall, 53 Cal. App. 4th 98.*

Ironically, the Attorney Defendants use a defense that would work for the plaintiff,
if the defendants had sued her for defamation. A defamation lawsuit would not
work. So instead the defendants conspired to use the un-related family law
proceedings to bully and batter Laura instead of filing a separate malicious
prosecution against her for exercising her right to free speech.

The Attorney Defendants stated on pg. 8 "...the Attorney Defendants have been
sued solely as a result of their petitioning activities on behalf of B.L. and S.L."

This is not true. The Attorney Defendants have been sued as a result of their activities on behalf of co-defendant Helen Lynn and her daughter Crystel Lynn-Strelioff. Neither Helen nor Crystel was joined as a party to the family law suit, and therefore any activity on their behalf is not protected by petition protections. The Attorney Defendants have also been sued for committing extrinsic fraud.

IV. THE ONE YEAR STATUTE OF LIMITATIONS ON ACTIONS AGAINST ATTORNEYS ARISING OUT OF THE PERFORMANCE OF PROFESSIONAL SERVICES TOLLS UNTIL THE PLAINTIFF CAN KNOW ABOUT THE ACTUAL CONSPIRACY TO COMMIT FRAUD AND THE DISCLOSURE OF THE ILLIGITIMATE COMMUNICATIONS BETWEEN THE DEFENDANTS THAT WERE NOT SUBJECT TO ATTORNEY-CLIENT PRIVILEGE AND FROM THE LAST OCCURANCE OF DAMAGE PURSUANT TO THE CONSPIRACY.

Assuming the statute of limitations applies in this case the period of limitations begins from the occurance of damage pursuant to the conspiracy. *Rutkin v Reinfeld, 229 F. 2d 248 (2d Cir. 1956) Rodriguez v North Am. Aviation, Inc., 252 Cal App. 2d 889, 61 Cal. Rptr. 579 (1st Dist. 1967).* "…upon joining a conspiracy, a defendant becomes a party to every act previously or subsequently committed by any of the other conspirators in pursuit of the conspiracy." *Paschal v Great Western Drilling, Ltd., 215 S.W. 3d 437 (Tex. App. Eastland 2006), review denied, (June 1, 2007).*

The damages are accruing as we speak. Laura continues to require anti-anxiety medication. Laura continues to miss time with BL, or even gaining access to

information about BL (contrary to the presumed, but void orders written by co-conspirators.) Laura is just now discovering some of the hideous lies Defendant Helen was able to drill into Sean's head before the San Diego Court stepped in and placed Sean with his mother.

But, as discussed in previous sections, the suit is not about the actions taken in the family law case, the performance of professional services. The suit is about the conspiracy to stop Laura from writing about the abduction of Helen's grandchildren by her daughter; to stop Laura from writing about Commissioner Friedenthal's other antics and the perverse and allegedly illegal activity of other court collaterals like William Spiller; and to defraud Laura of money to pay a non-party to the family law action (who allegedly gave substantial bribes to the court and Attorney Defendants). The Attorney Defendants, by their own argument, are using the wrong tort to decide the statute of limitations. The Statute of Limitations for conspiracy to defraud is five years, not one year.

The Statute of Limitations for the conspiracy to defraud will start to run when the appellate court affirms the award of about $5,000 per month to Tim Lynn, or if the appellate court overturns the decision, then possibly when the award was made in 2010.

The proper statute of limitations would be the statute for fraud, civil conspiracy and abuse of process, and intentional infliction of emotional distress.

V. CALIFORNIA CIVIL CODE 47 ABSOLUTE LITIGATION PRIVILEGE DOES NOT APPLY TO 42 USC 1983 or 1985 CLAIMS.

*Federal Rule of Evidence 501* provides "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

The Attorney Defendants are attempting to apply state law to a federal question.

## VI. CALIFORNIA CIVIL CODE 47 ABSOLUTE LITIGATION PRIVILEGE DOES NOT APPLY, BECAUSE THE TORTIOUS CONDUCT WAS NOT RELEGATED TO THE JUDICIAL PROCEEDINGS.

Should the Federal Court apply State standards in regards to the absolute litigation privilege, the Court Co-Conspirators are still busy chilling the plaintiff's free speech, even though Commissioner Friedenthal was recused from the case. On January 18, 2011 he made threatening, defamatory phone call to a source on a story the plaintiff was working on, that had nothing to do with the family law case, other than the judicial officer was involved as an alleged perpetrator of sexual misconduct with a minor. Within the last year, communications were made to Laura's employer at examiner.com by the co-conspirators to pressure the examiner

into cancelling Laura's column, which they did. And Defendant Howard continues
to deny the court ordered monitored visits; an action taken outside the protective
shield of the judicial proceedings.

" [when] the publication itself is alleged to be the tortious conduct. . ., the
privilege creates a "transactional immunity." Where, however, the alleged tortious
conduct is something other than the publication itself, then the publication may be
used as evidence bearing on the tortious nature of that conduct. In other words,
#"Civil Code section 47(2) does not provide an immunity from "use" of the
publication."'*Oren Royal Oaks, Supra, 42 Cal 3d, 1163.*

Any use the plaintiff makes of the family law proceedings as evidence will be not
to show what torts were committed in the family law case, but that there was no
reason ever given that would rationalize the orders made, and so, circumstantially,
this is evidence that the family law case was used as a baseball bat, weilded to
bully the plaintiff into giving up her rights in regards to other subjects.

*In Oren Royal Oaks,* "The Court of Appeal concluded that the alleged tortious
conduct was the institution of the writ of mandate for an improper purpose, which
constituted an abuse of process, and not the statements made during settlement
negotiations. Therefore, section 47, subdivision 2 would not bar the consideration
of those statements in determining the motive behind the administrative mandamus
action.

"The Supreme Court affirmed the summary judgment imposed by the trial court
because the complaint did not state a cause of action for abuse of process. No

1  doubt, the trial judge was amused by this touch of irony. The Supreme Court,

2  therefore, did not decide the provocative issue of whether the privilege applies in

3  an abuse of process case, where it is the judicial misconduct itself that forms the

4  basis for the cause of action. But, approving some of the reasoning of the court of

5  appeal, the Supreme Court noted that **Civi**l Code section 47,subdivision 2 would

6  not prohibit a court from considering for evidentiary purposes, the statements made

7  by the attorney in the settlement negotiations.

8

9  The Supreme Court went on to explain that section 47 is not an evidentiary

10  privilege excluding evidence but instead operates as a limitation upon liability.

11  'Indeed, on brief reflection, it is quite clear that section 47(2) has never been

12  thought to bar the *evidentiary* use of every statement or publication' made in the

13  course of a judicial proceeding: answers to interrogatories or to questions at

14  depositions are, for example, routinely admitted into evidence and relied on in

15  determining liability, even though they are clearly statements made in the course of

16  a judicial proceeding.' Thus, while 47(2) bars certain tort causes of action which

17  are predicated on a judicial statement or publication itself, the section does not

18  create an evidentiary privilege for such statements. Accordingly, when allegations

19  of misconduct properly put an individual's intent at issue in a civil action,

20  statements made during the course of a judicial proceeding may be used for

21  evidentiary purposes in determining whether the individual acted with the requisite

22  intent."_Id._ at p. 1168.)*Durant Software v. Herman, 220 Cal. App. 3d 460*

23

24  The plaintiff, who is not an attorney, should have cited a cause of action as "abuse

25  of process". This can be remedied if it please the court, by including that

26  terminology in a Second Amended Complaint, should one be necessary.

27

28

The plaintiff did not and is not including any statements made in the proceedings as the tortious act. The statements only go to prove the tortious act.

In other words, the plaintiff is not suing Helen for the lies she told about the plaintiff in family law court. She is suing Helen for conspiring with the Attorney Defendants to attempt to silence the plaintiff about the abduction by Helen's daughter, and to deny the plaintiff her right to a parent-child relationship in retaliation for hanging the posters. The most damning documents, the emails between Helen and Ken were not even part of the proceedings. They were withheld in an act of obstructing justice and extrinsic fraud.

The Attorney Defendants themselves cite *Silberg v Anderson, 50 Cal. 3d 205 (1990).* There it is found the attorney defendant's false statements "…were logically related to the action…" In the case at bar, the plaintiff is complaining that she was told not to hang missing children posters of Mac and Lynn Strelioff. Co-conspirator Friedenthal, in a later hearing, told the plaintiff she could not even mention Mac and Lynn, as they were not related to the family law case he presided over. If Commissioner Friedenthal states on one day that the missing children Mac and Lynn Strelioff are not related in any way to the family law case and not to mention them again, then Commissioner Friedenthal and his co-conspirators should not claim the statements made about the Strelioff case in their own declarations were "logically related to the action".

If this Court allows Commissioner Friedenthal, Ken Sherman and Helen to chill Laura's free speech in regards to subjects outside the jurisdiction of the family law

court, no journalist, publisher, blogger or even advertiser (collectively referred to as opinionated writer) will be safe to file for divorce. Anyone who does not agree with the opinionated writer's speech can just slip the judge or a court collateral a few bucks or other incentive, and the family court judge will shut the opinionated writer down. This is not an exaggeration. This is exactly what happened in the case of Laura Lynn v Alan H. Friedenthal, et al.

## VII. THE PLAINTIFF DOES NOT LACK ARTICLE III STANDING

The Court Defendants brought up Article III Standing in their motion for dismissal. The plaintiff did not even really understand what Article III Standing was, and was not prepared to appeal the dismissal. The other arguments would be more difficult to argue on appeal and so the plaintiff made a tactical decision not to pursue the issues in this forum at this time.

The plaintiff now understands Article III Standing as a bar to bringing up a moot point. As per the Wikipedia definition, there must be an actual conflict.

The Plaintiff's complaint is about an actual conflict, not some hypothetical. The Attorney Defendants actually conspired to deprive the Plaintiff of free speech and the Attorney Defendants committed extrinsic fraud and obstruction of justice in an attempt to transfer wealth from the Plaintiff or her parents to Helen Lynn and allegedly her co-conspirators. The money extracted was not for child support to a party to the family law action. The family law action was merely a vehicle to deliver the ill-gotten gains to Helen, who was not joined, and anyone she had to cut in to effect the fraud.

The Attorney Defendants on MPA 14 again assert that being relieved as counsel ended their participation in the alleged conspiracy and that "(s)ince the Attorney Defendants' withdrawal from the underlying custody dispute, there has been no act or omission of the Attorney Defendants alleged by Plaintiff to cause Plaintiff injury." This is not true. The Attorney Defendants made an omission by secreting the March 25, 2008 email suggesting to add financial fraud to the conspiracy until sending it to Sean on May 1, 2009. The Attorney Defendants have made no attempt known to the plaintiff to correct the situation. The Attorney Defendants never told Laura that all orders subsequent to September 2, 1997 were not valid due to violation of California Family Code 215, a fact that should have been quite apparent to professional attorneys who are even appointed by the court based on their expertise in family law. When Laura brought the Family Code 215 error voiding all subsequent orders to the Attorney Defendants' attention, the Attorney Defendants offered no assistance in having the invalid orders set aside.

On the day of the writing of this pleading, the Plaintiff received a letter from Department of Real Estate informing her that her Brokers license will be suspended as of July 28, 2011, unless she receives documentation that child support is not due from her. If the Attorney Defendants truly intend to withdraw from the conspiracy to deprive Laura of her rights and her money, they will give documentation to the Board of Real Estate or Department of Child Support Services stating all information they know that supports Laura's contention that the child support order was obtained by fraud.

It would not be possible for the Plaintiff to know each and every corrupt act that is still taking place. She does know Commissioner Friedenthal left the voicemail in

which he says "Hooking up with Laura Lynn, one of the sickest pathetic things on
the face of the planet, that's really something" to one of Laura's sources on
January 18, 2011. She does know that Presiding Family Law Judge Marjorie
Steinberg admitted in writing to ordering the family law case file altered in
violation of *California Government Code 6200 on February 25, 2011*. The
alteration of the case file was a further act in the ongoing conspiracy to chill
Laura's free speech under the color of law. (Administrative acts are not shielded
from civil liability by Judicial Immunity.)

Laura's continued need to seek psychiatric treatment for anxiety and fear that she
is still under surveillance is considered a continuing conflict by the Plaintiff. Even
the Attorney Defendants' malicious defense is an act of conflict between the
parties.

## VIII. NON STATE ACTORS CAN BE ACTING UNDER COLOR OF LAW WHEN ACTING IN CONCERT WITH STATE ACTORS

Conduct of ostensibly private actor is "under color of law" for purposes of section
1983 where, in light of all the circumstances, Government did more than adopt
passive position toward underlying private conduct. *Goldstein v Chestnut Ridge
Volunteer Fire Co., 218 F.3d 337, certiorari denied 121 S.Ct. 882, 531 U.S. 1126,
148 L.Ed.2d 790, certiorari denied 121 S.Ct. 1096, 531 US 1152, 148 L.Ed. 2d 969
-Civil R 1326(4).*

State action providing requisite "color of law" for action under sec 1983 is present
if private party is willful participant in joint action with state or its agents. *Cordova
v Vaughn Mun. School Dist. Bd. Of Educ., 3 F.Supp.2d 1216*

Person need not be an officer of the state to act under "color of law" within Civil Rights Act; it is enough that he be a willful participant in the joint activity with the state or its agents. *Rodriguez v. Conagra, Inc., 387 F.Supp. 951, affirmed 527 F.2d 540.*

Under 'color of law" for purposes of sec. 1983 actions means under pretense of law. *Billado v. Parry, 937 F. Supp. 337.*

Without significant aid from state officials, Defendant Helen and the Attorney Defendants could not have chilled Laura's right to free speech, the hanging of missing children flyers. *(See Reuben H. Donnelley Corp. v Brauer, 211 Ill Dec. 779, 655 N.E.2d 1162, 275 Ill.App.3d 300.)*

Just because the civil case against Commissioner Friedenthal and the other Court Defendants was dropped due to Judicial Immunity, Eleventh Amendment Bar to Suit and Article III Standing does not make them any less co-conspirators.

IX. CONCLUSION

For the foregoing reasons, plaintiff respectfully asks the Court to deny the Attorney Defendants' Motion for Judgment On The Pleadings.

JUNE 23, 2011 _Laura Lynn_

Laura Lynn, In Pro Per

NAME, ADDRESS AND TELEPHONE NUMBER OF ATTORNEY(S)

Laura Lynn
4507-B Mission Avenue
Oceanside, CA 92057

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

LAURA LYNN

                                          PLAINTIFF(S),

v.

ALAN H. FRIEDENTHAL, et al

                                          DEFENDANT(S).

CASE NUMBER

CV 09-08717-PSG(VBK)

## PROOF OF SERVICE - ACKNOWLEDGMENT
## OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of
San Diego _____, State of California, ~~and not a party to the above-entitled cause.~~ On June 24 _____, 20 11 _____, I served a true copy of
RESPONSE TO NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS
by personally delivering it to the person (s) indicated below in the manner as provided in FRCivP 5(b); by
depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following:
(list names and addresses for person(s) served. Attach additional pages if necessary.) 15260 Ventura Blvd, suite 920
Sherman Oaks, CA 91403

~~Place of Mailing:~~ Personal service to offices of Nemecek and Cole, reception desk  Terry
Executed on June 24 _____, 20 11 ____ at Los Angeles _____, California

Please check one of these boxes if service is made by mail:

☐ I hereby certify that I am a member of the Bar of the United States District Court, Central District of
   California.
☐ I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the
   service was made.
☒ I hereby certify under the penalty of perjury that the foregoing is true and correct.

                              _Laura Lynn_
                              *Signature of Person Making Service*

## ACKNOWLEDGEMENT OF SERVICE

I, _____, received a true copy of the within document on _____.

_____          _____
*Signature*                                *Party Served*

CV-40 (01/00)                    PROOF OF SERVICE - ACKNOWLEDGMENT OF SERVICE