UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| LAURA LYNN, | ) | No. CV 09-08717-PSG (VBK) |
| | ) | |
| Plaintiff, | ) | REPORT AND RECOMMENDATION OF |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | |
| ALAN FRIEDENTHAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This Report and Recommendation is submitted to the Honorable Philip S. Gutierrez, United States District Judge, pursuant to 28 U.S.C. §636 and General Order 05-07 of the United States District Court for the Central District of California.

## PROCEEDINGS

On November 25, 2009, Laura Lynn (hereinafter "Plaintiff") filed a Complaint entitled "Complaint for Immediate Injunctive and Other Relief."  Plaintiff brought this action for injunctive relief, compensatory and punitive damages pursuant to 42 U.S.C. §1983 and 18 U.S.C. §§241 and 242. (Complaint at 3.) Plaintiff named as Defendants Alan H. Friedenthal, individually and in his official capacity as

Commissioner of the Superior Court of the State of California, Los
Angeles; Steff R. Padilla, individually and in her official capacity
as Commissioner of the Superior Court of the State of California, Los
Angeles; the Superior Court of the State of California, Los Angeles;
Michael Howard; Helen A. Lynn; Kenneth P. Sherman; Carlson, De Klerk,
Sherman and Rale, and Does 1-9. (Complaint at 1-5.)

On April 20, 2010, the Court issued an Order re Dismissal with
Leave to Amend.

On May 19, 2010, Plaintiff filed a "First Amended Complaint"
pursuant to 42 U.S.C. §§1983, 1985 and 1988.

On July 19, 2010, Defendants Commissioner Friedenthal,
Commissioner Padilla and the Superior Court of the County of Los
Angeles filed a "Notice of Motion and Motion to Dismiss Plaintiff's
First Amended Complaint by Defendants Commissioner Friedenthal,
Commissioner Padilla and the Superior Court of California, County of
Los Angeles; Memorandum of Points and Authorities in Support Thereof
[F.R. Civ. P. Rules 12(b)(1) and (6)]."

On August 17, 2010, Plaintiff filed "Plaintiff's Request for
Judicial Notice" and "Plaintiff's Opposition to Motion to Dismiss."

On August 31, 2010, Defendants Commissioners Friedenthal and
Padilla and the Superior Court filed a "Reply to Plaintiff's
Opposition to the Defendants' Motion to Dismiss First Amended
Complaint."

On October 12, 2010, Defendants Kenneth P. Sherman and Carlson,
De Klerk, Sherman & Rale filed an Answer to Plaintiff's First Amended
Complaint.

On February 9, 2011, United States Magistrate Judge Victor B.
Kenton issued a Report and Recommendation recommending that Defendants

Commissioner Friedenthal, Commissioner Padilla and the Los Angeles County Superior Court's Motion to Dismiss be granted.

On March 8, 2011, United States District Judge Philip S. Gutierrez issued an "Order Accepting and Adopting the Report and Recommendation of United States Magistrate Judge" and "Judgment" was entered dismissing Defendants Commissioner Friedenthal, Commissioner Padilla, the Los Angeles County Superior Court and Michael Howard with prejudice.

On May 25, 2011, Defendants Kenneth P. Sherman, Carlson, De Klerk, Sherman & Rale filed a "Notice of Motion and Motion for Judgment on the Pleadings as to Plaintiff's First Amended Complaint by Defendants Kenneth P. Sherman, and Carlson, De Klerk, Sherman & Rale; Memorandum of Points and Authorities in Support Thereof" and "Request for Judicial Notice in Support of Motion for Judgment on the Pleadings as to Plaintiff's First Amended Complaint" (hereinafter referred to as "RJN").

On May 31, 2011, the Court issued a Minute Order ordering Plaintiff to file an Opposition or Statement of Non-Opposition to Defendants' Motion for Judgment on the Pleadings.

On June 24, 2011, Plaintiff filed "Response to Notice of Motion and Motion for Judgment on the Pleadings as to Plaintiff's First Amended Complaint by Defendants Kenneth P. Sherman and Carlson, De Klerk, Sherman and Rale" (hereinafter referred to as "Opposition").

On July 7, 2011, Defendants filed a "Reply in Support of Motion for Judgment on the Pleadings as to Plaintiff's First Amended Complaint by Defendants Kenneth P. Sherman, and Carlson, De Klerk, Sherman and Rale; Memorandum of Points and Authorities in Support Thereof" (hereinafter referred to as "Reply").

Having reviewed the allegations in Plaintiff's First Amended Complaint, Defendants Kenneth P. Sherman and Carlson, De Klerk, Sherman & Rale's Motion for Judgment on the Pleadings, Plaintiff's Opposition and Defendants' Reply, the Court hereby recommends that Defendants' Motion for Judgment on the Pleadings be granted.

## **STATEMENT OF FACTS**

Plaintiff was a party to a contentious custody dispute in Los Angeles County Superior Court Case No. PD 016769. (FAC at ¶ 17.)  In July of 2007, Defendant Kenneth P. Sherman, a partner in the law firm of Carlson, De Klerk, Sherman and Rale, was appointed by Defendant Commissioner Friedenthal to represent Plaintiff's two minor sons, S.L. and B.L., in the custody proceedings. (FAC, ¶¶ 11, 12, 38.) Defendant Commissioner Friedenthal placed the children, B.L. and S.L., in the custody of their paternal grandparents, Helen and Jim Lynn. (FAC, ¶ 39.) Plaintiff alleges that her warnings regarding the grandparents' unfitness to care for the children were foreshadowed by the fact that her son, S.L., later chose to live on the streets instead of with his father. (FAC, ¶¶ 39, 41.)  Plaintiff alleges that Defendants Commissioner Friedenthal and Kenneth P. Sherman predicted that this would happen to S.L. (FAC, ¶ 41.)

Plaintiff alleges that in December of 2007 Defendant Kenneth P. Sherman failed to return any of her phone calls while she was attempting to regain custody of her son, B.L., with whom she had only limited visitation rights. (FAC, ¶¶ 40, 49.)  On December 21, 2007, Defendant Kenneth P. Sherman applied, *ex parte*, for an Order to Show Cause why Plaintiff's visitations with her children should not be professionally monitored. (FAC, ¶ 49; RJN, Exhibit ["Ex."] 1.)  The *ex*

*parte* application was supported by the declaration of Helen Lynn, who, along with Jim Lynn, had custody of B.L. at that time.  Helen Lynn declared that, among other recent problems, B.L. had become "belligerent and verbally assaultive" after spending the weekend with Plaintiff, and had "talked about killing [Helen] and killing himself." (RJN, Ex. 1, p. 7, ¶ 9.)

Plaintiff alleges that the ex *parte* application was motivated by her admitted actions on December 19, 2007, wherein she hung missing children posters around her in-laws' neighborhood regarding M.S. and L.S., Jim and Helen Lynn's other grandchildren. (FAC, ¶¶ 18, 48, 52.) Defendant Commissioner Friedenthal was upset with Plaintiff for hanging missing children posters of M.S. and L.S. (Plaintiff's ex-husband's sister's children). Defendant Commissioner Friedenthal said if they were not her children she had no business hanging missing children posters.  (FAC at ¶¶ 49-50.)

Defendant Commissioner Friedenthal granted the ex *parte* application and ordered that Plaintiff's visitations be professionally monitored at her expense. (FAC ¶¶ 50, 51; RJN, Ex. 2, p. 43.) Plaintiff alleges that the hanging of the missing children posters of M.S. and L.S., is free speech and that the conspiracy between Helen Lynn and Defendant Kenneth P. Sherman to violate Plaintiff's protected speech is in violation of 42 U.S.C. §§ 1983 and 1985. (FAC, ¶¶ 50, 53.)

Defendant Kenneth P. Sherman continued to represent Plaintiff's son B.L. until the attorney Defendants made a motion to be relieved as counsel which was granted by the Court on July 16, 2008. Thereafter, attorney  E. Scott Clarke was appointed to represent B.L. (FAC ¶62.)

## **PLAINTIFF'S CAUSES OF ACTION**

Plaintiff alleges the following causes of action:

1.   Violation of the rights of Plaintiff under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§1983, 1985 and 1988, wherein Plaintiff claims that Defendants Commissioner Friedenthal and the Superior Court threatened retaliation if Plaintiff exercised her free speech;

2.   Violation of Plaintiff's rights under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§1983 and 1985 against Defendants Commissioner Padilla and the Los Angeles County Superior Court. Plaintiff alleges that "Facebook" postings violated her free speech and caused emotional distress;

3.   Violation of Plaintiff's rights under the First, Fifth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§1983, 1985 and 1988 wherein Plaintiff alleges Defendants Helen Lynn, Kenneth P. Sherman and Carlson De Klerk, Sherman & Rale violated Plaintiff's free speech rights;

4.   Violation of Plaintiff's rights under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§1983 against Defendant Michael Howard;

5.   Negligent infliction of emotional distress and denial of rights under the Fifth Amendment of the United States Constitution against Defendant Los Angeles County Superior Court for failure to supervise a Commissioner;

6.   Negligent infliction of emotional distress and denial of

1    constitutional rights of the First and Fifth Amendments of

2    the United States Constitution and in violation of 42 U.S.C.

3    §1983 against Doe Defendants; and

4    7.    Civil conspiracy against Defendants Helen Lynn, Kenneth P.

5          Sherman, and Carlson, De Klerk, Sherman & Rale wherein

6          Plaintiff alleges that those Defendants conspired to deprive

7          Plaintiff of child support by false pretense. (FAC at ¶¶

8          105-126.)

9

10              **DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

11       Defendants Kenneth P. Sherman, and Carlson, De Klerk, Sherman &

12   Rale contend that Plaintiff's First Amended Complaint should be

13   dismissed on the following grounds: (1) Plaintiff's civil rights

14   action is barred by the <u>Rooker-Feldman</u>[1] doctrine; (2) Plaintiff's

15   claims are barred by the absolute immunity provided by the <u>Noerr-</u>

16   <u>Pennington</u> Doctrine; (3) Plaintiff's claims against the attorney

17   Defendants are barred by the one-year statute of limitations on

18   actions against attorneys arising out of the performance of

19   professional services; (4) Plaintiff's civil conspiracy claim is

20   barred by the absolute litigation privilege; (5) Plaintiff lacks

21   Article III standing; and (6) Plaintiff's 42 U.S.C. § 1983 claim fails

22   because attorney Defendants were not state actors acting under color

23   of state law.

24   //

25   //

26

27   [1]    <u>See</u> <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S.
     462, 482, 103 S.Ct. 1303 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263
28   U.S. 413, 415-16, 44 S.Ct. 149 (1923).

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION

## FOR JUDGMENT ON THE PLEADINGS

Plaintiff contends that her civil rights action is not barred by the <u>Rooker-Feldman</u> Doctrine; Plaintiff's claims are not barred by the absolute immunity provided by the <u>Noerr-Pennington</u> Doctrine; the one-year statute of limitations on actions against attorneys arising out of the performance of professional services is tolled until Plaintiff knows about the actual conspiracy to commit fraud and the disclosure of the illegitimate communications between Defendants that were not subject to the attorney-client privilege and from the last occurrence of damage pursuant to the conspiracy; California Civil Code  47 absolute litigation privilege does not apply to 42 U.S.C. § 1983 or § 1985 claims; Civil Code 47 absolute litigation privilege does not apply because the tortious conduct was not relegated to the judicial proceedings; Plaintiff does not lack Article III standing; and non-state actors can be acting under color of law when acting in concert with state actors.

## DEFENDANTS' REPLY

Defendants in their Reply contend that Plaintiff's civil rights claims are barred by the <u>Rooker-Feldman</u> Doctrine; Plaintiff's reliance on <u>McDonald</u>[2] is misplaced and all of Plaintiff's claims are barred by the absolute immunity provided by the <u>Noerr-Pennington</u> Doctrine; Plaintiff admits that she suffered actual injury on December 21, 2007 such that her claims are absolutely barred by the one-year statute of limitations embodied in California Code of Civil Procedure § 340.6;

---

[2]   <u>McDonald v. Smith</u>, 472 U.S. 479, 105 S.Ct. 2787 (1985).

the absolute litigation privilege bars Plaintiff's claims for civil conspiracy; Plaintiff's opposition confirms that she lacks Article III standing; and Plaintiff's response does not provide any authority under which the attorney Defendants can be considered "state actors" for the purpose of Plaintiff's 42 U.S.C. § 1983 claims.

### <u>LEGAL STANDARD</u>

**A.   <u>Motion for Judgment on the Pleadings</u>.**

Judgment on the pleadings pursuant to Rule 12(c) is appropriate when, even if all material facts in the non-moving party's pleadings are true, the moving party is entitled to judgment as a matter of law. <u>Torbet v. United Airlines, Inc.</u>, 298 F.3d 1087, 1089 (9th Cir. 2002), <u>overruled on other grounds</u> by <u>United States v. Aukai</u>, 497 F.3d 955 (9th Cir. 2007).  The standard applied on a Rule 12(c) motion for judgment on the pleadings is essentially the same as that applied on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  See, <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1989).

Under Federal Rule of Civil Procedure Rule 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief'
requires more than labels and conclusions, and a formulaic recitation
of the elements of a cause of action will not do." Id. (citations
omitted).  In other words, "(t)hreadbare recitals of the elements of
a cause of action, supported by mere conclusory statements do not
suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009).

     "To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state the claim to
relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949
(quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility
when the plaintiff pleads factual content that allows the Court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged."  Iqbal, 129 S.Ct. 1937, 1949 (2009)(citing
Twombly, 550 U.S. at 556.) "The plausibility standard is not akin to
a 'probability requirement,' but it asks for more than a sheer
possibility that a defendant acted unlawfully." (Id.)  The Complaint
must contain "factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct
alleged."  Iqbal, 129 S.Ct. at 1949. "[W]here the well-pled facts do
not permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged - but it has not 'show[n]' -
'that the pleader is entitled to relief.'" (Id. at 1950 [quoting
Fed.R.Civ.P. 8(a)(2) (internal brackets omitted).  "[A] well-pled
complaint may proceed even if it appears that a recovery is very
remote and unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. 1955
(quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974)).

     Pro se pleadings are liberally construed.  Ortez v. Washington
County, 88 F.3d 804, 807 (9th Cir. 1996).  Generally, review is

1  limited to the contents of the complaint.  Clegg v. Cult Awareness
2  Network, 18 F.3d 752, 754 (9th Cir. 1994).  However, material which is
3  properly submitted as part of the complaint may be considered on a
4  motion to dismiss.  Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir.
5  1997).  Also, a court may take judicial notice of "matters of public
6  record" without converting a motion to dismiss into a motion for
7  summary judgment.  Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th
8  Cir. 2001).  Allegations of material fact in the complaint are taken
9  as true and construed in the light most favorable to the nonmoving
10 party.  Clegg v. Cult Awareness Network, 18 F.3d at 754.  "The court
11 need not, however, accept as true allegations that contradict matters
12 properly subject to judicial notice or by exhibit.  Nor is the court
13 required to accept as true allegations that are merely conclusory,
14 unwarranted deductions of fact, or unreasonable inferences."  Sprewell
15 v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.) (citations
16 omitted), amended by 275 F.3d 1187 (2001).

17

18                          **DISCUSSION**

19     For all of the following reasons, Defendants' Motion for Judgment
20 on the Pleadings should be granted.

21

22     A.   **Plaintiff's Civil Rights Action is Barred by the Rooker-
23          Feldman Doctrine**.

24     Plaintiff alleges in Count III that "Defendants Helen A. Lynn and
25 Kenneth P. Sherman, Doe 6 and the partnership of Carlson, De Klerk,
26 Sherman & Rale conspired with a state actor [i.e., Commissioner
27 Friedenthal and the Los Angeles County Superior Court] to violate the
28 Plaintiff's right to free speech, the posting of missing children

posters, by intimidating and oppressing the Plaintiff by requesting
the court to order monitored visitation with her child.  A 42 U.S.C.
1983, 1985 and 1988 cause of action arises from the deprivation of the
Plaintiff's constitutional rights.  The Defendants' action caused
severe emotional distress due to the loss of her constitutionally
guaranteed right to a parent-child relationship, as well as the
restriction to her First Amendment right to free speech." (FAC, ¶
117.)

Federal District Courts may exercise only original jurisdiction;
they may not exercise appellate jurisdiction over state court
decisions. District of Columbia Court of Appeals v. Feldman, 460 U.S.
462, 482, 103 S.Ct. 1303 (1983); Rooker v. Fidelity Trust Co., 263
U.S. 413, 415-16, 44 S.Ct. 149 (1923); Dubinka v. Judges of the
Superior Court, 23 F.3d 218, 221 (9th Cir. 1994).  This rule arises
from the juxtaposition of two statutes: 28 U.S.C. §1331, giving
District Courts original jurisdiction over civil actions arising under
federal law, and 28 U.S.C. §1257, giving the United States Supreme
Court the right to review final judgments rendered by the highest
court of a state.  Dubinka at 221.  The rule applies even when the
challenge to the state court's decision is based on alleged
deprivations of federally protected rights.  Allah v. Superior Court,
871 F.2d 887, 891 (9th Cir. 1989).

A federal Plaintiff may not avoid the Rooker-Feldman bar by
styling an attack on a state court's ruling as a civil rights action.
Branson v. Nott, 62 F.3d 287, 291 (9th Cir. 1995), cert. denied, 116
S. Ct. 565 (1995); Worldwide Church of God v. McNair, 805 F.2d 888,
893 n. 4.  In determining whether a civil rights action is such an
attack, the Court must determine whether the federal Plaintiff's

claims are "inextricably intertwined" with the state court's ruling.
District of Columbia Court of Appeals v. Feldman 460 U.S. 462, 482 n.
16, 103 S.Ct. (1983); Dubinka v. Judges of the Superior Court, 23 F.3d
218, 221 (9th Cir. 1994). A federal claim is inextricably intertwined
with the state court's ruling when a district court must scrutinize
the state court's application of the law. Dubinka at 222. Put
another way, a "federal claim is inextricably intertwined with the
state court judgment if the federal claim succeeds only to the extent
that the state court wrongly decided the issues before it." Pennzoil
Co. v. Texaco, Inc., 481 U.S. 1, 25, 107 S.Ct. 1519 (1987) (Marshall,
J., concurring.)

     Plaintiff alleges that the attorney Defendants and Helen Lynn
conspired with Defendant Commissioner Friedenthal and violated
Plaintiff's right to free speech. (FAC, ¶ 117.) It appears that
Plaintiff, unhappy with the Los Angeles County Superior Court's
rulings, is attempting to circumvent the decisions of the Los Angeles
County Superior Court by filing a civil rights action. This is
improper; rather, Plaintiff should appeal the Los Angeles County
Superior Court's rulings through the state court system.

     Plaintiff further alleges that Defendants' actions in ordering
Plaintiff's visitations with her son be monitored violated her
constitutional rights and restricted her First Amendment right to free
speech. (FAC, ¶ 117.) However, "[t]o establish a First Amendment
retaliation claim ... a plaintiff must show that: (i) [she] was
engaged in a constitutionally protected activity, (ii) that the
defendants' actions would chill a person of ordinary firmness from
continuing to engage in the protected activity, and (iii) that the
protected activity was a substantial or motivating factor in the

defendant's conduct." <u>Pinard v. Clatskanie School Dist. 6J</u>, 467 F.3d 755, 770 (9th Cir. 2006); <u>Mendocino Envtl. Ctr. v. Mendocino County</u>, 192 F.3d 1283, 1300 (9th Cir. 1999).

In order to analyze Plaintiff's civil rights violations based on the allegations contained in ¶ 117 of the FAC, this Court necessarily would have to determine whether the Los Angeles County Superior Court's decision was correct.  Specifically, this Court would need to render a decision on whether Defendant Commissioner Friedenthal's alleged orders prohibiting Plaintiff from posting missing children posters in her former in-laws' neighborhood and requiring Plaintiff's visits with her son, B.L., to be professionally monitored, were correct.  Consequently, any claims arising out of these allegations are inextricably intertwined with the Los Angeles County Superior Court's rulings, and are barred by the <u>Rooker-Feldman</u> Doctrine as a matter of law.

**B.**   **Plaintiff's Claims Are Barred by the Absolute Immunity Provided by the Noerr-Pennington Doctrine.**

The <u>Noerr-Pennington</u> Doctrine, which arose in the context of antitrust law, holds that those who petition the government for redress are generally immune from liability.  <u>California Motor Transport Co. v. Trucking Unlimited</u>, 404 U.S. 508, 510-11, 92 S.Ct. 609 (1972)[the <u>Noerr-Pennington</u> Doctrine extended to "the approach of citizens ... to administrative agencies ... and to the courts"].  The Doctrine is well established under California law and has been applied to bar liability for activities undertaken in the course of representing a client in litigation.  <u>Premier Medical Management Systems, Inc. v. California Ins. Guarantee Ass'n.</u>, 136 Cal.App.4th

464, 478-79 (2006).  The immunity applies no matter how a plaintiff chooses to characterize a purported cause of action if, as here, the acts which necessarily underlie the purported cause of action are taken in the course of presenting a matter in a court of law.  In Ludwig v. Superior Court, 37 Cal.App.4th 8, 21-22, fn. 17 (1995), the Court explained, "obviously, the principle of constitutional law that bars litigation arising from injuries received as a consequence of First Amendment petitioning activity [should be applied] regardless of the underlying cause of action asserted by the plaintiffs [citation]. [T]o hold otherwise would effectively chill the defendants' First Amendment rights [citation]." Ludwig, 37 Cal.App.4th at 21-22, fn. 17 (quoting Hi-Top Steel Corp. v. Lehrer, 24 Cal.App.4th 510, 577-78 (1994).

In Premier Medical Management Systems, Inc. v. California Ins. Guarantee Ass'n., supra, the Court analyzed the applicability of the Noerr-Pennington Doctrine to bar liability based upon conduct undertaken in the course of litigating lien claims. In holding that the complaint was subject to being stricken insofar as the Noerr-Pennington Doctrine completely barred plaintiff's claims, the court concluded, "[t]he gravamen of plaintiff's action arises from the activity of defendants in litigating lien claims ..."Premier, 136 Cal. App. 4th at 477.  Holding that the right of litigants and their counsel to present their positions in a court of law constitutes the essence of petitioning activity, the court dismissed the claim in its entirety.

Plaintiff in her Opposition relies on McDonald v. Smith, 472 U.S. 479, 105 S.Ct. 2787 (1985) for the proposition that the Noerr-Pennington Doctrine does not apply to her case. Plaintiff argues that

libelous and damaging falsehoods in petitions to Government officials are not protected by the Noerr-Pennington Doctrine.  Plaintiff's reliance on McDonald, however, is mistaken.  The attorney Defendants are being sued by Plaintiff for their conduct associated with litigation on behalf of Plaintiff's minor sons, B.L. and S.L. Plaintiff's claims against Defendants Kenneth P. Sherman, and the law firm Carlson, De Klerk, Sherman & Rale are based on their petitioning activities in the custody dispute.  The gravamen of Plaintiff's Complaint is that after the attorney Defendants were appointed by the Court to represent Plaintiff's sons, they conspired with the Court and others to deprive her of her constitutional right to free speech and a parent-child relationship.  However, the attorney Defendants' conduct cannot be characterized as libel, such that McDonald would apply.

Plaintiff also contends that the attorney Defendants have been sued as a result of their activities on behalf of Defendant Helen Lynn and her daughter Crystal Lynn Strelioff (Opposition at 15) and therefore are not protected by the Noerr-Pennington Doctrine. However, the attorney Defendants did not represent either Helen Lynn or Crystal Lynn Strelioff.

The attorney Defendants have the right to present their positions and their clients' positions in a court of law.  The attorney Defendants are protected by the Noerr-Pennington Doctrine because their representation of Plaintiff's minor sons, B.L. and S.L., in the underlying action was petitioning activity. The attorney Defendants were appointed by Defendant Commissioner Friedenthal to advocate for their clients, S.L. and B.L.  Plaintiff's claims are therefore barred under the Noerr-Pennington Doctrine as a matter of law.

C.   **Plaintiff's Claims Against the Attorney Defendants Are Barred by the One-Year Statute of Limitations on Actions Against Attorneys Arising out of the Performance of Their Professional Services.**

California Code of Civil Procedure § 340.6 governs the statute of limitations for all actions (other than actual fraud) regarding an attorney's alleged wrongful act or omission, regardless of the theory pled.  Section 340.6 provides that:

> "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. ...  in no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that ...:
>
> (1) The plaintiff has not sustained actual injury."

In July of 2007, Defendant Kenneth P. Sherman was appointed by Defendant Commissioner Friedenthal to represent Plaintiff's two minor sons, B.L. and S.L., in the custody proceedings. (FAC, ¶¶ 11, 12, 38.) As noted by Plaintiff in her Opposition, Defendant Kenneth P. Sherman was relieved as attorney of record on July 16, 2008. (Opposition at 1.)

Plaintiff was aware of the facts giving rise to her claim against the attorney Defendants by December 21, 2007.  At that time, Defendant

Kenneth P. Sherman is alleged to have: "[f]iled an Application for Order and Supporting Declaration dated December 19, 2007 in order to effect the ex parte order to require a monitor for Laura's visits. Mr. Sherman did not speak to Laura about the 'facts' he alleged. Mr. Sherman made his recommendations based on double hearsay (what Helen said B.L. said Laura said) and the act of hanging the missing children posters." (FAC, ¶ 52.)   On that date, Defendant Commissioner Friedenthal issued a temporary order requiring Plaintiff's visits with her son, B.L., to be monitored. (RJN, Ex. 2 at p. 2: 15-26.)

Plaintiff alleges that "Defendants Helen A. Lynn and Kenneth P. Sherman, Doe 6 and the partnership of Carlson, De Klerk, Sherman & Rale conspired with a state actor to violate Plaintiff's right to free speech, the posting of missing children posters, by intimidating and oppressing the Plaintiff by requesting the Court to order monitored visitation with her child." (FAC, ¶ 117.)   Plaintiff further alleges that "[t]he Defendants' actions caused severe emotional distress due to the loss of her constitutionally guaranteed right to a parent-child relationship, as well as the restriction to her First Amendment right to free speech." (Id.)

Based on Plaintiff's allegations, her rights were infringed upon by the Los Angeles County Superior Court's December 21, 2007 order requiring her visits to be professionally monitored. (FAC, ¶ 51; RJN, Ex. 2.)   There is no question but that the December 21, 2007 Order caused Plaintiff to suffer "actual injury" sufficient to end any tolling of the one-year statute of limitations.   Plaintiff was therefore required to file her action against the attorney Defendants within one year thereafter, or by no later than December 21, 2008. Plaintiff's Complaint filed on or about November 25, 2009 was filed

18

1    more than 11 months after the statute of limitations expired.

2

3        **D.    Plaintiff Lacks Article III Standing**.

4        Defendants Kenneth P. Sherman and Carlson, De Klerk, Sherman &

5    Rale contend that Plaintiff lacks standing under Article III to bring

6    this action.  As stated in O'Shea v. Littleton, 414 U.S. 488, 493-94,

7    94 S.Ct. 669 (1974), "Plaintiffs in the federal courts 'must allege

8    some threatened or actual injury resulting from the putatively illegal

9    action before a federal court may assume jurisdiction.' ... Abstract

10   injury is not enough.  It must be alleged that the Plaintiff 'has

11   sustained or is immediately in danger of sustaining some direct

12   injury' as the result of the challenged statute or official conduct.

13   ... The injury or threat of injury must be both 'real and immediate,'

14   not 'conjectural' or 'hypothetical.'" (Citations omitted.)

15       Here, there is no "current controversy" between Plaintiff, and

16   the attorney Defendants.  As conceded in Plaintiff's FAC, the attorney

17   Defendants were relieved as counsel for Plaintiff's sons, B.L. and

18   S.L., in July of 2008, more than a year before Plaintiff filed her

19   original Complaint. (FAC, ¶ 62; Opposition at 1.) Moreover, the only

20   alleged misconduct of the attorney Defendants amounted to their ex

21   parte application seeking professional monitoring of Plaintiff's

22   visitations with her son, B.L., in December of 2007. Since the

23   attorney Defendants' withdrawal from the underlying custody dispute,

24   there has been no act or omission of the attorney Defendants alleged

25   by Plaintiff to cause Plaintiff injury.  Plaintiff does not have any

26   present injury in fact and therefore, does not have Article III

27   standing to proceed with this action against the attorney Defendants.

28   //

**E.**   **Plaintiff Has Failed To State A Claim Against Each Defendant Under Section 1983.**

42 U.S.C. §1983 provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

In order to state a claim under §1983, Plaintiff must allege that: (1) Defendant was acting under color of state law at the time the complained-of act was committed; and (2) Defendant's conduct deprived Plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31, 106 S.Ct. 677 (1986); Jensen v. City of Oxnard, 145 F.3d 1078, 1082 (9th Cir.), cert. denied, 119 S.Ct. 540 (1998).

Plaintiff also must establish causation, by demonstrating that each Defendant personally was involved in the constitutional violation, or that there was a sufficient causal connection between the Defendant's wrongful conduct and the constitutional violation. Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991)(en banc), cert. denied, 502 U.S. 1074 (1992); Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).  "The inquiry into causation must

1  be individualized to focus on the duties and responsibilities of each
2  individual defendant whose acts or omissions are alleged to have
3  caused a constitutional deprivation."  Leer v. Murphy 844 F.2d 628,
4  633 (9th Cir. 1988).

5       Liability may be imposed on an individual defendant under §1983
6  only if the plaintiff can show that the defendant proximately caused
7  the deprivations of his federally protected rights of which he
8  complains.  Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); Harris
9  v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981).

10      To state a claim under Title 42 U.S.C. §1983, the plaintiff must
11  allege a violation of her constitutional rights and show that the
12  defendant's actions were taken under color of state law.  West v.
13  Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988); Gritchen v. Collier,
14  254 F.3d 807, 812 (9th Cir.2001).  That the defendant act under color
15  of state law is "'a jurisdictional requisite for a §1983 action.'" Id.
16  (quoting West v. Atkins, 487 U.S. 42, 46, 108 S.Ct. 2250 (1988)).
17  Similarly, a plaintiff basing a cause of action on alleged
18  constitutional violations must show that the "actions complained of
19  are 'fairly attributable' to the government." Morse v. North Coast
20  Opportunities, Inc., 118 F.3d 1338, 1340 (9th Cir. 1997).

21      Generally, private actors are not acting under color of state
22  law.  See Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991).  In
23  order to determine whether a private actor acts under color of law for
24  §1983 purposes, the Court looks to whether the conduct causing the
25  alleged deprivation of federal rights is fairly attributable to the
26  State.  Id. (citing Lugar v. Edmundson Oil Co., Inc., 457 U.S. 922,
27  937, 102 S.Ct. 2744 (1982)).  Conduct may be fairly attributable to
28  the State where (1) it results from a governmental policy and (2) the

defendant is someone who fairly may be said to be a governmental
actor.  Lugar v. Edmundson Oil Co., Inc., 457 U.S. 922, 937, 102 S.Ct.
2744 (1982); see also Sutton v. Providence St. Joseph Medical Center,
192 F.3d 826, 839 (9th Cir. 1999).  Defendants Kenneth P. Sherman and
Carlson, De Klerk, Sherman & Rale are not state actors.

Here, Plaintiff has failed to set forth sufficient facts against
Defendants Kenneth P. Sherman and the law firm of Carlson, De Klerk,
Sherman and Rale to state a civil rights cause of action under 42
U.S.C. §1983.  Defendants Kenneth P. Sherman and Carlson, De Klerk,
Sherman and Rale are not "state actors."  Plaintiff's FAC against the
attorney Defendants must be dismissed because Defendant Kenneth P.
Sherman was not "acting under color of state law."  Here, the attorney
Defendants were appointed by Defendant Commissioner Friedenthal to
represent Plaintiff's minor children in a custody dispute. (FAC, ¶¶
11, 38.)  The attorney Defendants did not represent Plaintiff, nor did
they owe any duty to her. The attorney Defendants only owed a duty to
the children to act in their best interests with respect to the
custody proceedings.  Consequently, the attorney Defendants could not
and did not act under color of state law at any time during the
custody proceedings when they communicated with Helen Lynn, Plaintiff,
or the Court; when they filed the ex parte application seeking
monitored visitations with B.L.; or when they allegedly chose to
ignore Plaintiff's phone calls and work with Helen in drafting a
declaration for the ex parte application.  As a private attorney
appointed by the court, Defendant Kenneth P. Sherman was still acting
as a private actor.  Additionally, any services performed by the
attorney Defendants in connection with the underlying custody dispute
could not constitute actions under color of state law.  See Franklin

1 | v. Oregon, 662 F.2d 1337, 1345 (9th Cir. 1981).

2 |

3 |     **F.**    **Plaintiff's Civil Conspiracy Claim Is Barred by the**

4 |     **Litigation Privilege Set Forth in Civil Code § 47(b)**.

5 |     Plaintiff in the seventh count of the FAC alleges, in a single

6 | sentence, that "Helen Lynn, Kenneth P. Sherman, Carlson, De Klerk,

7 | Sherman & Rale and Doe 6 conspired to defraud the Plaintiff of child

8 | support by false pretense ." (FAC, ¶ 126.) "The litigation privilege

9 | shields any 'publication or broadcast' made in any ... judicial

10 | proceeding." A. F. Brown Elec. Contractor, Inc. v. Rhino Electric

11 | Supply, Inc., 137 Cal.App.4th 1118, 1126, 41 Cal.Rptr.3d (2006); see

12 | also California Civil Code § 47(b). All of Plaintiff's claims against

13 | the attorney Defendants are absolutely privileged as communications in

14 | legal proceedings which have some connection or logical relation to

15 | the legal proceedings.  In Rusheen v. Cohen, 37 Cal.4th 1048, 39 Cal.

16 | Rptr. 3d 516 (2006), the California Supreme Court explained that the

17 | absolute immunity under Civil Code § 47(b) litigation privilege

18 | extended to communications "with some relation" to judicial

19 | proceedings and extends to the steps taken thereafter in execution on

20 | the judgment.

21 |     Thus, "communications with 'some relation' to judicial

22 | proceedings" are "absolutely immune from tort liability" by the

23 | litigation privilege. Rubin v. Green, 4 Cal.4th 1187, 1193, 17 Cal.

24 | Rptr. 2d 828 (1993). It is not limited to statements made during a

25 | trial or other proceedings, but may extend to steps taken prior

26 | thereto, or afterwards." (Id. at 1057.)  The litigation privilege is

27 | absolute and bars all causes of action other than a claim for

28 | malicious prosecution, including those asserted in federal court.

Rohde v. Wolf, 154 Cal.App.4th 28, 38, 64 Cal.Rptr.3d 348 (2007). It has also been regularly applied in federal courts. "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action [Citations]." Silberg v. Anderson, 50 Cal.3d 205, 212 (1990). See Morales v. Cooperative of Am. Physicians, Inc., 180 F.3d 1060, 1062 (9th Cir. 1999). Courts have given the privilege an expansive reach and held that the privilege is absolute, even in cases in which the result in inequitable. Doctors' Co. Ins. Servs. v. Superior Court, 225 Cal.App.3d 1284, 1294, 275 Cal. Rptr. 674 (1990). Any doubt as to whether the privilege applies is resolved in favor of applying it. Adams v. Superior Court, 2 Cal.App.4th 521, 529, 3 Cal. Rptr. 2d 49 (1992).

"Pleadings and process in a case are generally viewed as privileged communications." Navellier v. Sletten, 106 Cal.App.4th 763, 770, 131 Cal. Rptr. 2d 201 (2003). Indeed, even allegedly false or perjurious pleadings and declarations have been held to be covered by the litigation privilege. See Pollock v. University of Southern California, 112 Cal.App.4th 1416, 1431, 6 Cal. Rptr. 3d 122 (2003)(A declaration "functions as written testimony," is a "communication, not conduct" and "is exactly the sort of communication that privilege is designed to protect").

Thus, Plaintiff's conspiracy claim only alleges conduct by the attorney Defendants arising out of the representation of Plaintiff's minor sons B.L. and S.L. in the family court action, namely, their alleged interference with Plaintiff's claim for child custody. As

such, the attorney Defendants' conduct is absolutely privileged. Indeed, the conduct alleged by Plaintiff relates solely to communications and recommendations to a court relating to issues under consideration by that court. As such, Plaintiff's claims against the attorney Defendants are barred.

Further, a conspiracy claim brought under § 1983 requires proof of an "agreement or meeting the minds to violate constitutional rights." Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002), quoting United Steel Workers of America v. Phelps Dodge, 865 F.2d 1539, 1540, 41 (9th Cir. 1989)(citation omitted), and an actual deprivation of constitutional rights. Hurt v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006)(quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin, 312 F.3d at 441, quoting United Steel Workers, 865 F.2d at 1541.

To state a claim for conspiracy, Plaintiff must allege specific facts showing two or more persons intended to accomplish an unlawful objective of causing Plaintiff harm and took some concerted action in furtherance thereof. Gilbrook v. City of Westminster, 177 F.3d 839 (9th Cir. 1999); Burns v. County of King, 883 F.2d 819, 822 (9th Cir. 1989)(conclusory allegations of conspiracy insufficient to state a valid § 1983 claim); see also Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998)(to state a claim for conspiracy under § 1983, Plaintiff must allege facts showing agreement of the alleged conspirators to deprive him of his rights. A conspiracy allegation, even if established, does not give rise to a liability under § 1983 unless

there is a deprivation of civil rights.).

A valid claim for conspiracy between private parties and the government to violate constitutional rights requires an agreement or "meeting of the minds." <u>Adickes v. S.H. Kress and Co.</u>, 398 U.S. 144, 158 (1970).  Further, the acts of the private parties must be "sufficiently intertwined" with a violating government actor amounting to more than "near acquiescence." <u>Fonda v. Gray</u>, 707 F.2d 435, 438 (9th Cir. 1983). Accordingly, Plaintiff has failed to state a civil conspiracy claim and the attorney Defendants must be dismissed.

**<u>RECOMMENDATION</u>**

For all of the foregoing reasons, **IT IS RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting Defendants Kenneth P. Sherman and Carlson, De Klerk, Sherman & Rale's Motion for Judgment on the Pleadings; and (3) directing that an Order be entered dismissing these Defendants from this action with prejudice.

DATED:  December 2, 2011          _____/s/_____

VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE</u>**

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to timely file Objections as provided in the Local Rules Governing the Duties of the Magistrate Judges, and review by the District Judge whose initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of

1  the Judgment of the District Court.